UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARRY FOX, NARCISA FOX, individually and as parents and natural guardians and Guardians ad litem of A.F., D.F., S.F., and M.F., as minors,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>COUNTY OF SACRAMENTO, SCOTT ANDERSON, RICH COCKERTON, BRENDAN MCATEE, ELISA OLMO, SOKA OM, JASON WALKUP, JOY PIKE, CITY OF RANCHO CORDOVA, JASMINE DELGADO,<br><br>　　　　　　Defendants. | Case No. 2:11-CV-00419 JAM-KJN<br><br><u>ORDER GRANTING IN PART AND<br>　　　DENYING IN PART<br>DEFENDANTS' MOTON TO DISMISS</u> |

　　　This matter comes before the Court on a Motion to Dismiss Plaintiff's First Amended Complaint (Doc. #16) brought by Defendants County of Sacramento, Scott Anderson, Rich Cockerton, Brendan McAtee, Elisa Olmo, Soka Om, Jason Walkup, Joy Pike, and City of Rancho Cordova (collectively "Defendants"). Defendants ask the Court to dismiss certain claims and Defendants in the First Amended Complaint("FAC", Doc. #14) filed by Plaintiffs Barry Fox,

Narcisa Fox, individually and as parents and natural guardians and Guardians <u>ad litem</u> of A.F., D.F., S.F., and M.F., minors, collectively ("Plaintiffs").  Plaintiffs oppose the motion (Doc. #17).[1]

## I. FACTUAL AND PROCEDURAL BACKGROUND

According to the FAC, on January 29, 2010, Narcisa Fox ("Mrs. Fox") delivered her two and a half year old son M.F. into the care, custody, and control of his baby sitter, Defendant Jasmine Delgado ("Delgado") at Delgado's home.  That afternoon, Mrs. Fox received a telephone call from Delgado telling her that something was wrong with M.F.'s feet and that Mrs. Fox should pick up M.F.  When Mrs. Fox arrived at Delgado's mother's apartment, she found M.F. lying on a sofa in the living room, with pants on, but without shoes or socks.  M.F.'s feet were pink to red in color and appeared to have large water blisters and detached skin on their tops.  Delgado told Mrs. Fox that the redness, blistering, and detached skin on M.F.'s feet must have been caused by a bacterial infection.

Mrs. Fox and Delgado took M.F. to the Doctors Center Medical Group, Inc. in Fair Oaks.  The attending physician directed Mrs. Fox to take M.F. to the Shriners' Burn Center Hospital in Sacramento.  Mrs. Fox was told by a social worker and the attending physician that M.F.'s injury was not from bacteria, but from a burn caused by M.F.'s feet being immersed in scalding hot liquid.

At approximately 3:00 a.m. on January 30, 2010, Defendant Scott Anderson ("Anderson") and Brendan McAtee ("McAtee") placed

---

[1] This motion was determined to be suitable for decision without oral argument. E.D. Cal. L.R. 230(g).  The hearing was scheduled for August 3, 2011.

the Minor Plaintiffs into temporary protective custody based on suspected child abuse.  Plaintiffs allege that Anderson and McAtee did not have a warrant when they entered Plaintiffs' home.

On or before February 3, 2010, Defendants Elisa Olmo ("Olmo") and Soka Om ("Om"), signed a document entitled "Detention Report" and filed it with the Sacramento Superior Court's Juvenile Division.  Plaintiffs allege the Detention Report contained false and misleading statements including the claims that the child was dropped off by Mrs. Fox with the condition being present and that it buried exculpatory evidence concerning Delgado's statement on page 7.  The Detention Report also contained allegations that Mr. Fox was defensive in his demeanor.  The Detention Report resulted in the preparation and filing of Juvenile Dependency Petitions.  Dependency Hearings began on February 3, 2010.  On February 18, 2010, the Juvenile Court, after hearing testimony from Delgado, A.F., Mr. Fox, and Mrs. Fox, allowed A.F. and D.F. to return to the family home.  S.F. was ordered to remain in a separate home and M.F. would join him upon his release from the hospital.  The Juvenile Court imposed supervised visitation between Parent Plaintiffs and S.F. and M.F.

On March 18, 2010, Walkup and Pike signed the Jurisdiction/Disposition Report ("JDR") which reiterated all of the previous allegations in the Detention Report except that Mrs. Fox dropped off the child with Delgado with the condition already being present.  The JDR also included a summary of the statement in which M.F. indicated he had been burned by Delgado's mother, a summary of a follow-up interview with Delgado, a summary of an interview with Delgado's mother, and an interview with the consulting physician at

Shriners in which he said that the blisters would have manifested within 15 to 20 minutes of M.F.'s exposure to the scalding liquid. On March 25, 2010, the Juvenile Court dismissed the Juvenile Dependency Petitions without prejudice and restored the parental rights of the Parent Plaintiffs.

On February 14, 2011 Plaintiffs filed a Complaint (Doc. #1). Defendants filed a Motion to Dismiss (Doc. #8), but instead of opposing the Motion to Dismiss, on May 2, 2011, Plaintiffs filed an Amended Complaint (Doc. #14) without asking leave of the Court.[2] The FAC alleges eight causes of action: 1) violation of Plaintiffs' Fourth Amendment rights for the unlawful entering into Plaintiffs' home without a warrant and in the absence of exigent circumstances; 2) the unlawful taking of minor children without a warrant and in the absence of exigent circumstances; 3) depriving Plaintiffs of due process by failing to disclose relevant exculpatory evidence and by misrepresenting facts in the Juvenile Dependency Petitions, and by deliberate indifference to the rights of Plaintiffs to a fair and honest hearing; 4) suppression and misrepresentation of evidence and the continued separation of Plaintiffs and the continued removal of the minor plaintiffs from their home in violation and in deliberate indifference to Plaintiffs' due process

---

[2] In Defendants' introduction in their Motion to Dismiss, they state that Plaintiffs filed the FAC on May 2, 2011, when the last day for Plaintiffs to file an amended pleading without leave of the court was on April 28, 2011. Plaintiffs counter that because the initial motion was served by Notice of Electronic filing, Rule 6(d) adds three (3) days to the twenty-one (21) day period proscribed by Rule 15(a)(1)(B) for a total of twenty-four (24) days. See F.R. Civ. P. 6(d). Applying the day-counting proceedings of Rule 6(a), the 24th day following April 7, fell on Sunday, May 1, 2011. Thus, pursuant to Rule 6(a)(1)(C), the last day for filing and service of the FAC was extended through Monday, May 2, 2011. See F.R. Civ. P. 6(a). The Court finds that the FAC was timely filed.

4

rights under the Fourteenth Amendment; 5) Monell claim against the county; 6) Monell claim against the city; 7) injunction against county and city; and 8) negligence against Delgado. Defendants move to dismiss certain claims and certain individual defendants in the FAC (Doc. #16).

## II. OPINION

### A. Legal Standard

#### 1. Motion to Dismiss

A party may move to dismiss an action for failure to state a claim upon which relief can be granted pursuant to Federal Rules of Civil Procedure 12(b)(6). In considering a motion to dismiss, the court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984); Cruz v. Beto, 405 U.S. 319, 322 (1972). Assertions that are mere "legal conclusions," however, are not entitled to the assumption of truth. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009), citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, a plaintiff needs to plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. Dismissal is appropriate where the plaintiff fails to state a claim supportable by a cognizable legal theory. Balistreri v. Pacifica Police Department, 901 F.2d 696, 699 (9th Cir. 1990).

Upon granting a motion to dismiss for failure to state a claim, the court has discretion to allow leave to amend the complaint pursuant to Federal Rules of Civil Procedure 15(a).

"Dismissal with prejudice and without leave to amend is not appropriate unless it is clear . . . that the complaint could not be saved by amendment." Eminence Capital, L.L.C. v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003).

### 2. Section 1983

Plaintiff's claims against Defendants are brought under 42 U.S.C. § 1983. To prevail in a § 1983 civil action against state actors for the deprivation of

> rights, privileges, or immunities secured by the Constitution and laws, a plaintiff must show that (1) acts by the defendants (2) under color of state law (3) deprived him of federal rights, privileges or immunities and (4) caused him damage. Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred. Accordingly, the conduct complained of must have deprived the plaintiff of some right, privilege or immunity protected by the Constitution or laws of the United States.

Thornton v. City of St. Helens, 425 F.3d 1158, 1163-64 (9th Cir. 2005) (internal citations omitted).

## B. Claims for Relief

### 1. First and Second Claims for Relief

Defendants argue that the First and Second Claims for Relief should be dismissed against Olmo, Om, Pike, and Walkup, collectively ("CPS Defendants"), for failure to set forth specific facts. In their opposition, Plaintiffs admit that the First Claim for Relief does not purport to state claims against the CPS Defendants who are identified by their true names, except to the extent that it may later be discovered that one or more of the named CPS Defendants was a DOE defendant. Plaintiffs further admit that the Second Claim does not purport to state a claim against

anyone other than the three named defendant police officers.

The Court's Status (Pre-trial Scheduling) Order dismisses "all DOE or other fictitiously-named defendants." Status (Pre-trial Scheduling) Order at 2:17-18 (hereinafter "Scheduling Order"). Plaintiffs request that the DOE Defendants not be dismissed until the pre-trial conference, after discovery is conducted, because they will not know, for example, the actual identity of the CPS workers, if any, who participated in the taking of the Minor Plaintiffs from their home without a warrant. Plaintiffs' argument regarding DOE defendants (whom the Court has already dismissed), is, as Defendants argue, an attempt to circumvent their failure to plead specific facts implicating these four CPS Defendants.

If, during discovery, Plaintiffs discover the identities of additional defendants, they may file a motion to amend the complaint. Should the motion to amend be opposed on statute of limitations or waiver grounds, the Court will take up those arguments at that time. Since there are currently no allegations in the First and Second Claims setting forth specific facts concerning the CPS Defendants, the Court GRANTS Defendants' motion to dismiss the First and Second claims for relief as to Olmo, Om, Pike, and Walkup WITH LEAVE TO AMEND.

///
///

   2.   <u>Third and Fourth Claims for Relief Concerning CPS Defendant Pike</u>

Defendants seek dismissal of the Third and Fourth Claims against CPS Defendant Pike ("Pike") on the grounds that these claims contain no specific allegations of wrong doing by Pike with

7

respect to the investigation or preparation of the Detention Report.  Plaintiffs confirm that the Third claim does not allege any action by Defendant Pike. Accordingly, Defendants' Motion to Dismiss this claim against Pike is GRANTED WITH PREJUDICE.

As to the Fourth Claim, Plaintiffs argue that while they do not know the full role Pike played in the CPS investigation or in the preparation of the Detention Report or Jurisdiction/Disposition Report ("JDR "), Pike signed the JDR which allegedly reiterated all but one of the false statements in the Detention Report and failed to point out the falsity of the omitted statement in support of a recommendation that the petitions be dismissed without prejudice to their refilling.  While the court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff, Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984), the plaintiff must set forth specific facts as to each individual defendant's causal role in the alleged constitutional deprivation, Leer v. Murphy, 866 F.2d 628, 633 (9th Cir. 1988).

In the Fourth Claim, Plaintiffs allege that Pike signed the JDR which allegedly contained false statements and failed to explain the omission of a false statement. These allegations are sufficient to maintain this claim at this time and therefore Defendants' Motion to Dismiss Pike from the Fourth Claim for failure to state a claim is DENIED.

       3.   <u>Third and Fourth Claims for Relief Concerning Defendants Anderson, McAtee, and Cockerton</u>

Defendants next argue that in the Third and Fourth Claims Plaintiffs fail to plead specific facts as to the causal role of

8

Defendants Anderson, McAtee, and Cockerton, collectively ("Officer Defendants"), in the preparation of the Detention Report, juvenile dependency proceeding petitions, JDR or the continued removal of minors during the juvenile proceedings.  Defendants point out that Anderson is only named to the extent that the Detention Report included minimal references to him.  Plaintiffs oppose the dismissal of these claims, arguing that but for the wrongful taking of the children by the police, there would have been no Detention Report and no JDR.

Plaintiffs reliance on Wallis v. Spencer, 202 F.3d 1126 (9th Cir. 2000) is misplaced and does not save these claims as to these Officer Defendants. Plaintiffs' attenuated theory of causation wholly ignores the independent actions and roles played by the Officer Defendants and the CPS Defendants. The FAC does not allege that the Officer Defendants participated in the preparation of any reports or proceedings continuing the separation of the minors from their parents.  Without alleging these requisite specific facts, Plaintiffs cannot state a claim against the Officer Defendants for violation of their rights in connection with the dependency proceedings.  Accordingly, Defendants' Motion to Dismiss the Third and Fourth Claims as against Anderson, McAtee, and Cockerton is GRANTED WITH LEAVE TO AMEND.

      4.   <u>Immunity for CPS Defendants OLMO, OM, PIKE, and WALKUP</u>

Defendants argue that the CPS Defendants are entitled to absolute, qualified, and/or quasi-judicial immunity for the Third and Fourth Claims.

9

### a. Absolute Immunity for the Third Claim

Defendants argue that the CPS Defendants are entitled to absolute immunity in connection with the preparation and filing of the Detention Report.  Plaintiffs argue that the Detention Report contained false statements and suppressed exculpatory evidence.  Specifically, Plaintiffs point to the statement that the child was dropped off by the mother with the condition already being present.

It is well settled that social workers have absolute immunity when they make "discretionary, quasi-prosecutorial decisions to institute court dependency proceedings to take custody away from parents."  Beltran v. Santa Clara Cnty., 514 F.3d 906, 908 (9th Cir. 2008) (en banc) (per curiam) (quoting Miller v. Gammie, 335 F.3d 889, 898 (9th Cir. 2003) (en banc)).  Social workers' functions, such as commencing investigations and initiating proceedings against parents who may have abused their children, are afforded absolute immunity because these actions are functionally equivalent to that of a prosecutor.  Meyers v. Contra Costa Cnty. Dep't of Social Services, 812 F.2d 1154, 1157 (9th Cir. 1987).  But social workers are not entitled to absolute immunity from claims that they fabricated evidence during an investigation or made false statements because such actions are not similar to discretionary decisions about whether to prosecute.  Beltran, 514 F.3d at 908.

Here, Plaintiffs' Third Claim alleges that a reasonable investigation by the CPS defendants would have prevented the inclusion of false and/or misleading statements in the Detention Report.  However, it was unclear who was responsible for M.F.'s injuries at the time the Detention Report was filed.  The attending physician's notes stated that "it [was] not clear what happened

10

when the mother took the child from the baby sitters [sic.] house." Id. at ¶ 54.  Plaintiffs further allege that CPS Defendants relied upon the physician's opinions at the time they filed the Detention Report on February 3, 2010.  Id.

> The social worker must make a quick decision based on perhaps incomplete information as to whether to commence investigations and initiate proceedings against parents who may have abused their children. The social worker's independence, like that of a prosecutor, would be compromised were the social worker constantly in fear that a mistake could result in a time-consuming and financially devastating civil suit.

Meyers, 812 F.2d at 1157.  Plaintiffs proffer no allegations that the CPS Defendants deliberately or recklessly made false statements or omissions that were material.  See KRL v. Moore, 384 F.3d 1105, 1117 (9th Cir. 2004) ("To support a § 1983 claim of judicial deception, a plaintiff must show that the defendant deliberately or recklessly made false statements or omissions that were material to the finding of probable cause.").  Plaintiffs instead allege that the CPS Defendants included statements that were ultimately established as incorrect.

Plaintiffs' allegation that the CPS Defendants failed to include exculpatory evidence is also not persuasive.  Delgado's exculpatory statement to Anderson on January 30, 2010 was placed on page 7 of the Detention Report.  While Plaintiffs would have preferred it to be at the beginning of the report, Plaintiffs provide no further allegations that the CPS Defendants withheld exculpatory evidence.

Because Plaintiffs do not allege that the CPS Defendants deliberately or recklessly made false statements and they do not point to exculpatory evidence that was in fact withheld from

11

Plaintiffs, the CPS Defendants are entitled to absolute immunity for the Third Claim for relief.

### b. Qualified Immunity for the Third Claim

Because the Court found that the CPS Defendants have absolute immunity for the Third Claim, there is no need to reach the issue of whether the CPS Defendants would also have qualified immunity for that claim.

### c. Quasi-Judicial Immunity for the Fourth Claim

Plaintiffs' Fourth Claim alleges that the CPS Defendants failed to complete a reasonable investigation from February 4, 2010 until March 18, 2010, the date the JDR was filed. The JDR recommended that the Juvenile Dependency Petitions against Plaintiffs be dismissed without prejudice. Defendants argue that the CPS Defendants have quasi-judicial immunity because during this time period, the Juvenile Court issued two court orders mandating that the minors remain separated from Plaintiffs based on findings that continuance in the parents' home was contrary to their welfare. Defendants argue that the CPS Defendants are entitled to quasi-judicial immunity for all actions taken in response to the Juvenile Court's orders.

Plaintiffs counter that they are not suing the CPS Defendants for obeying the Juvenile Court's orders, but because the CPS Defendants inserted false statements into the Detention Report and reiterated all but one of those statements in the JDR and refused to admit the falsity of the statements or to point out that the false statements had been removed. Plaintiffs allege the CPS defendants suppressed the evidence concerning the burn-to-blister

1 time, until it was no longer possible to suppress it, and they
2 recommended and obtained a dismissal without prejudice.
3    When social workers obey court orders, they have quasi-
4 judicial immunity.  See Coverdell v. Dep't of Social & Health
5 Servs., 834 F.2d 758, 765 (9th Cir. 1987) (holding that a CPS
6 worker be accorded absolute quasi-judicial immunity from liability
7 stemming from the worker's apprehension of a child pursuant to a
8 valid court order); McConnell v. Lassen Cnty., No. S-05-0909, 2007
9 WL 1931603, *10 (E.D. Cal. June 29, 2007) (holding Defendant social
10 worker did not have unilateral authority to return children to
11 parents while children were under the jurisdiction of the Juvenile
12 Court, and also held that social workers enjoy absolute, quasi-
13 judicial immunity when making post-adjudication custody decisions
14 pursuant to a valid court order).  Accordingly, the CPS Defendants
15 have quasi-judicial immunity for their actions relating to the
16 Juvenile Court's orders and the continued separation of the minors
17 from their Plaintiff parents from February 2, 2010-March 18, 2010.
18    Concerning the content of the JDR, the CPS Defendants do not
19 have quasi-judicial immunity for the preparation of the JDR because
20 they were not acting under the direction of the Juvenile Court.
21 The CPS Defendants also do not have absolute immunity for the JDR,
22 unlike the Detention Report, because the Detention Report was
23 compiled to institute court proceedings whereas the JDR was
24 prepared after the detention hearing, in the CPS Defendants'
25 investigative capacities.  When social workers "make discretionary
26 decisions and recommendations that are not functionally similar to
27 prosecutorial or judicial functions, only qualified, not absolute
28 immunity is available.  Miller, 335 F.3d at 898.

While the Court finds that the CPS Defendants do not have quasi-judicial or absolute immunity with respect to the allegations in the Fourth Claim concerning the content of the JDR, Defendants also argue that the CPS Defendants have qualified immunity with respect to preparing the JDR.

The doctrine of qualified immunity shields public officials sued in their individual capacity from monetary damages, unless their conduct violates "clearly established" law of which a reasonable public officer would have known. Saucier v. Katz, 533 U.S. 194, 199 (2001).

The court must make a two-step inquiry in deciding the issue of qualified immunity. Saucier, 533 U.S. at 200. First, the court must determine whether, under the facts alleged, taken in the light most favorable to the plaintiff, a violation of a constitutional right occurred. Id. If so, the court must then ask whether the constitutional right was clearly established at the time of the violation. Id.

Initially, the Supreme Court in Saucier held that these two inquiries must be decided in rigid order. Saucier, 533 U.S. at 200. That is, a district court had to resolve whether a violation of a constitutional right occurred before it could evaluate whether the right was clearly established. Recognizing, however, that "there are cases in which it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right," the Supreme Court recently relaxed the order of analysis. Pearson v. Callahan, 555 U.S. 223, 237 (2009). In Pearson, the Court held that the Saucier analysis may be addressed in either order if the second step is clearly dispositive

1 and can address the matter efficiently.  Id. at 241-42.
2      It is clearly established that a parent has a constitutionally
3 protected interest in the custody or care of his or her children.
4 Santosky v. Kramer, 455 U.S. 745, 753 (1982).  However, this
5 constitutional interest is not absolute.  In an emergency
6 situation, a state agency may remove children from their parents'
7 custody when the children are subject to immediate or apparent
8 danger or harm.  Caldwell v. LeFaver, 928 F.2d 331, 333 (9th Cir.
9 1991).
10      While Plaintiffs allege that CPS should have discovered and
11 revealed that the statement that the child was dropped off by the
12 mother with the condition already being present was false, the
13 amount of time it would take for the burns to blister, and that
14 Delgado's mother burned the child, before 3:00 a.m. on January 30,
15 2010 when the Minor Plaintiffs were taken or before February 2,
16 2010 when the Detention Report was prepared and filed, these
17 allegations do not demonstrate that the CPS Defendants' conduct
18 "violated 'clearly established statutory or constitutional rights
19 of which a reasonable person would have known' or was otherwise
20 inconsistent with a standard of 'objective legal reasonableness.'"
21 Miller, 846 F.2d at *1 (citing Harlow v. Fitzgerald, 457 U.S. 800,
22 818-19 (1982)).  Furthermore, Plaintiffs do not point to any
23 statements in the JDR that were blatantly false or fabricated.  The
24 JDR contained exculpatory evidence and resulted in the dismissal of
25 charges against the Parent Plaintiffs.  Thus, the Court finds that
26 the CPS Defendants did not violate Plaintiffs' clearly established
27 constitutional rights and are protected by qualified immunity from
28 the Fourth Claim.

III. ORDER

For the reasons set forth above,

The Court GRANTS Defendants' Motion to Dismiss the First and Second Claims as to Olmo, Om, Pike, and Walkup WITH LEAVE TO AMEND.

The Court GRANTS Defendants' Motion to dismiss Pike from the Third Claim WITH PREJUDICE.

The Court DENIES Defendants' Motion to Dismiss Pike from the Fourth Claim under Fed.R.Civ.P. 12(b)(6), but, as indicated below, finds that Pike has quasi-judicial and qualified immunity as to this claim.

Defendants' Motion to Dismiss the Third and Fourth Claims as against Anderson, McAtee, and Cockerton is GRANTED WITH LEAVE TO AMEND.

Defendants Olmo, Om, Pike, and Walkup are entitled to absolute immunity as to the Third Claim.

Defendants Olmo, Om, Pike, and Walkup are entitled to quasi-judicial qualified immunity as to the Fourth Claim for relief.

Plaintiffs shall have twenty (20) days from the date of this Order to file a Second Amended Complaint if they so desire. Otherwise, this case will proceed against the remaining Defendants on the First Amended Complaint.

IT IS SO ORDERED.

Dated: September 23, 2011

_____
JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE